UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL McGEE,

        Plaintiff,

v.                                                   Case No. 06-C-721

TIM THOMAS, et al.,

        Defendants.

**DECISION AND ORDER**

      Plaintiff McGee, who is incarcerated involuntarily under Wisconsin's Chapter 980 program, alleges that the defendants violated his due process rights when they placed him in segregated confinement following an incident with a staff member. Both sides in this § 1983 action filed motions for summary judgment; because I find no genuine issues of material fact that would allow a jury to conclude that McGee's constitutional rights were violated, the defendants' motion will be granted and the case dismissed.

**I. Background**

      Plaintiff was involved in an incident on May 21, 2006 while housed at the Wisconsin Resource Center. According to Amy Bump, a psychiatric care technician, McGee approached her menacingly while holding a chair. He attempted to corner her in the dayroom, and after her call for help he threw the chair at her and ripped off his shirt. He continued to approach her with clenched fists but was subdued by staff. (Bump Aff., ¶¶ 17-18.) This incident resulted in the issuance of a BDR (Behavioral Disposition Record) and McGee's "demotion" to a higher level of management,

the upshot of which was that McGee was transferred to Sand Ridge (another Chapter 980 facility) and housed in its Secure Treatment Wing (STW). (Bump Aff., Ex. 1010). The BDR paperwork reflects that McGee "accepted" this punishment orally but refused to sign the form.

McGee was placed in the Secure Treatment Wing due to his behavior on May 21. The STW, also known as the AD Wing, has four "patient" rooms, a courtyard, a shower room and a dayroom. (Thomas Aff., ¶ 6.) Inmates have freedom to move around, as well as library, telephone and visiting privileges. The STW is designed to allow the facility to better control disruptive inmates and induce such inmates to behave better. *See Williams v. Nelson,* 398 F. Supp.2d 977, 985 (W. D. Wis. 2005). All told, McGee spent some three weeks in the STW.

McGee's story is somewhat different. He states that he was upset because he was told he could not stand near the television when in fact people stood there all the time. After being told to return to his room, he kicked a chair in anger and then picked it up, at which point security staff arrived. (McGee Statement of Undisputed Facts, ¶¶ 12-15.) He was then read his BDR – which he did not "agree" with – and transferred to Sand Ridge, where he states that he was placed in "A.D. Seclusion" for some three weeks. The incident with the chair was all a scheme by a conspiracy of individuals who wanted to create a pretext for punishing him in order to show the court that he was violent. (Pltf. Br. in Opp. at 3-4.) This would aid their efforts to keep him incarcerated even though they knew he does not belong in the Chapter 980 program (a claim he advances in a § 2254 action in this court).

**II. Analysis**

Plaintiff argues that he never agreed to placement in seclusion; the defendants had no authority to transfer him; a doctor never ordered such placement; and such conditions constitute

2

impermissible punishment. In sum, he argues that as a Chapter 980 inmate rather than a convict, he is entitled to much better treatment and that placement in seclusion – a form of unjustifiable punishment – violates his right to substantive due process. McGee also appears to argue that his transfer to the STW violated procedural due process because it was done without first holding a hearing.

As to the substantive due process argument, plaintiff is generally correct that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo,* 457 U.S. 307, 321-22 (1982). But as I recently explained in rejecting a similar claim,

> ... there is a vast difference between punishing an individual for a crime of which he has not been convicted and imposing sanctions for violations of institutional rules. Neither *Bell* [*v. Wolfish*, 441 U.S. 520 (1979)], nor *Youngberg*, stands for the broad principle that individuals who are civilly detained may not be punished for violating the rules of the institution in which they are confined. *Bell* explicitly recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." 441 U.S. at 546. The Seventh Circuit has likewise held that Chapter 980 patients "may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others." *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir.2003). This, of course, includes imposing sanctions upon, or more precisely, "punishing," those who violate the rules of the institution in which they are confined. *See West v. Schwebke*, 333 F.3d 745, 748 (7th Cir.2003) (noting that "a pretrial detainee may be put in isolation-indeed, may be punished for violating institutional rules, provided that the jailers furnish notice and an opportunity for a hearing"). Otherwise, the guards might just as well hand over the keys to the detainees.

*Clark v. Taggart*, 2007 WL 1655160 *3 (E.D. Wis. June 6, 2007).

In his briefs, plaintiff relies heavily on *West v. Schwebke,* a case in which the defendants' claims of qualified immunity were rejected by the district court and the Seventh Circuit because

3

genuine issues of fact remained regarding whether ordering 20-plus days of seclusion was justified either in terms of treatment or institutional security. The court in *West* set forth several general principles governing conditions of confinement for Chapter 980 inmates. Although true that such inmates cannot be "punished" in the traditional sense, the fact that they are involuntarily incarcerated means that they are obviously also subject to standard rules of such confinement, and such rules include conditions that might be deemed coercive. "To the extent that plaintiffs are uncontrollably violent, and thus pose a danger to others, Wisconsin is entitled to hold them in segregation for that reason alone; preserving the safety of the staff and other detainees takes precedence over medical goals." *Id.* at 748. If seclusion is justified on either security or treatment grounds, the institution may impose such a condition. In *West,* however, the plaintiffs had been placed in "therapeutic seclusion," which the court described as follows:

> treatment plans used at the [Wisconsin] Resource Center contemplated the possibility that misconduct would lead to what the state calls "therapeutic seclusion": placement in a cell that contains only a concrete platform (which serves as a bed), a toilet, and a sink. Detainees in seclusion often were deprived of clothing and other amenities. Secluded detainees were allowed out, in shackles, one hour a day on weekdays and not at all on weekends (when staffing levels were lower). When the staff thought that secluded detainees might be ready for return to the general population, they were allowed out two hours a day, but still kept in restraints. One plaintiff was held in seclusion for 82 consecutive days (and more than 100 days all told in 1998); all plaintiffs have been held in seclusion for at least 20 consecutive days.

*Id.* at 747.

In *West,* there was a debate among expert witnesses as to whether "therapeutic seclusion" was a justifiable mental health approach to treatment. Because this debate was an issue of fact, there was an open question as to whether the defendants were entitled to qualified immunity, and thus the district court's denial of summary judgment on that basis was justified. *Id.*

4

The problem for McGee is that his case is not a case of "therapeutic seclusion" of the sort that would raise substantive due process concerns. Although he calls his placement "seclusion" (and he was in fact secluded for a period of hours on the day of the incident), his transfer to the STW at Sand Ridge effectuated only a change to a more secure environment. McGee was not cuffed, shackled, placed on lockdown or given – as in *West* – only an hour of recreation a day. He was not locked all day in a concrete cell with no mattress, and he had clothes, access to visitors, reading material, a courtyard, dayroom, etc. – it was just that he no longer had the freedoms he apparently enjoyed at the Wisconsin Resource Center. The Seventh Circuit has held that involuntary civil committees may be held in prison-like conditions, and at worst the STW appears to be similar to a prison or common jail. "Our plaintiffs were not assigned to high-security institutions, solitary, lockdown, or otherwise onerous confinement. . . . Plaintiffs do not assert that their situation is worse in any material way than the situation in which ordinary pretrial detainees find themselves [i.e., in jail]." *Allison v. Snyder,* 332 F.3d at 1079. Because the STW's restrictions mirror those of a standard prison (at worst), placement in STW does not constitute impermissible punishment. *Id.* ("Does placement in a prison, subject to the institution's usual rules of conduct, signify punishment? The answer, given by *Bell v. Wolfish*, is no.") Thus, because the conditions of the STW are not "punishment," the defendants are entitled to summary judgment on McGee's substantive due process claim.

McGee also appears to raise a procedural due process argument. The defendants concede that McGee did not receive a hearing prior to his transfer, which was apparently a violation of the state's own rules. (Or so they thought.) When they learned about the absence of a hearing, McGee was released from the STW. He has since been transferred back to the Wisconsin Resource Center.

5

The defendants now argue, however, that McGee was not entitled to a hearing because he received a "summary sanction BDR," a sort of sanction not requiring any hearing at all.

The leading case on procedural due process in the Chapter 980 context is *Thielman v. Leean,* 282 F.3d 478 (7th Cir. 2002). There, the Seventh Circuit applied the principles of *Sandin v. Connor,* 515 U.S. 472 (1995), concluding that Chapter 980 inmates have constitutional procedural protections in their confinement level only when the proposed change in confinement would effect an "atypical and significant hardship in relation to the ordinary incidents of [the inmate's] confinement." 282 F.3d at 484. That is, even if the state's own procedures or laws require a hearing prior to transfer, that requirement does not trigger *federal* protection unless the change in confinement is truly significant. As the Seventh Circuit put it, "any person already confined may not nickel and dime his way into a federal claim by citing small, incremental deprivations of physical freedom." *Id.*

In determining whether a change in confinement is atypical or merely "the stuff of nickels and dimes," the court is to look to the ordinary incidents of confinement. *Id.* Here, it is clear that the STW was not materially atypical when compared to the ordinary confinement conditions in a Chapter 980 facility. It might be arguable if an inmate were sent to a secluded cell and locked within for substantial portions of the day, as in *Allison*; but inmates in STW are not in lockdown, shackled, etc., and have substantial freedom of movement. Thus, even if the facility's own rules required a hearing (which the defendants deny), the absence of one did not trigger any federal constitutional protections. Ultimately the point of *Sandin* and *Thielman* is that once a state lawfully incarcerates a man against his will – the most profound intrusion on his liberty – the differences between various levels of incarceration do not generally effect a material change (constitutionally

6

speaking) on the inmate's liberty. A liberty interest is implicated only when the changes complained of are so major that they stand out even within the prison system (or the Chapter 980 system), and that did not occur here.

Finally, McGee's procedural due process claim must fail for another, independent reason. Specifically, neither of the defendants were involved in the failure to conduct a hearing prior to the BDR being issued. (Lutz Aff., ¶ 7; Thomas Aff., ¶ 17.) Both Lutz and Thomas are employed at Sand Ridge, yet the BDR was issued while McGee was at the Wisconsin Resource Center. The decision to hold a pre-deprivation hearing thus lay with individuals who are not party to this lawsuit. Because § 1983 is premised on personal liability, neither of these defendants can be held accountable here even if a procedural due process violation occurred.

Accordingly, for the reasons given herein, the defendants' motion for summary judgment is **GRANTED**; the plaintiff's motion is **DENIED**, and the case is **DISMISSED**.

**SO ORDERED** this   22nd   day of August, 2007.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge

7

Case 2:06-cv-00721-WCG   Filed 08/22/07   Page 7 of 7   Document 54